IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JACob ALLEY, PAUL ATKINSON, CHRISTIAN BRATTON and all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>QUALITY ECO TECHNOLOGIES, LLC.,<br><br>          Defendant. | Civil Action No.:  3:20-cv-355<br>TRIAL BY JURY DEMANDED |

**PLAITNIFFS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIM PURSUANT TO RULE 12(b)(6)**

COME NOW Plaintiffs Jacob Alley, Paul Atkinson, and Christian Bratton, by counsel, and state as follows in support of their motion to dismiss Defendant Quality Eco Technologies, LLC's ("QET") Counterclaim:

### INTRODUCTION

On or about July 7, 2020, QET responded to Plaintiffs' relatively straightforward FLSA Collective Action Complaint with a six (6) Count Counterclaim.[1] Supported by only the thinnest of alleged facts coupled with perfunctory and conclusory recitations of the elements of each claim, QET seeks recovery of not less than $1,350,000 against three ex-installers.[2] Without exaggeration,

---

[1] The Counterclaim purports to state claims for1) Breach of Contract,2) Implied Indemnity, 3) Negligence, 4) Breach of Fiduciary Duty and Fraud, 5) Conversion, and 6) Defamation.

[2] QET's introductory paragraph and prayer for relief also ask for interest beginning on February 25, 2019, but that date appears nowhere else in the counterclaim and no notice is provided as to its significance.  Notably, as alleged in Plaintiffs' collective action complaint [Doc. 1], Plaintiff Alley left QET on that date. Nevertheless, the counterclaim does not allege any facts indicating why interest should run from February 25, 2019, and in fact, the counterclaim seems to assert that certain damages would have arisen on work performed as late as 2020.  *See* [Doc. 10 at ¶¶ 6 and 10].

exclusive of those paragraphs dealing with party identities, venue, and the six (6) charging counts themselves, QET's counterclaim sets out a sum total of seven (7) factual allegations, all found in paragraphs 6-13 of the document.[3] Yet, despite this obvious dearth of supporting facts, QET shows no restraint in attempting to make a circus of this matter[4], by suggesting, with nearly no specifics, that among other things, the Plaintiffs defrauded QET and its customers, breached contracts with QET, damaged QET customer homes, defamed QET, and also stole from it, to boot. QET's transparent efforts should not be countenanced by this court and for the myriad reasons set forth below, the Counterclaim fails to state any claims and should be dismissed in totality.

## ARGUMENT

### I. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) A claim has requisite "facial plausibility" when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the "plausibility" standard differs from a "probability requirement," it still requires more than a "sheer

---

[3] Paragraph 13 of the counterclaim misdates by one year, a text message sent by Alley to QET's co-owner, Mr.Basso. The Counterclaim states the text was sent on June 5, 2020. Plaintiffs believe the message was sent a year earlier, on June 5, 2019. Nevertheless, Plaintiffs recognize that unless/until voluntarily corrected or withdrawn, this allegation must be taken as true for the purposes of this motion, even if plainly incorrect.

[4] In addition to the legal reasons set forth herein, policy considerations recognized by courts support dismissing QET's counterclaim in this FLSA action. The courts have been hesitant to allow employers to file counterclaims for monetary damages against employees who bring FLSA claims against them. *See Ramirez v. Amazing Home Contrs., Inc.*, No. JKB-14-21688, 2014 U.S. Dist. LEXIS 164739 (D. Md. Nov. 25, 2014) (quoting *Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 740 (5th Cir. 2010)). Permitting the employer to do so can cause undue delay and subvert efforts to bring the employer into compliance with the FLSA. *Id.* (citing *Donovan v. Pointon*, 717 F.2d 1320, 1323 (10th Cir. 1983)). QET's counterclaims lack any merit and have nothing to do with the facts and claims at issue in Plaintiffs' collective complaint. The counterclaim's continued prosecution will only delay proceedings on Plaintiffs' substantive action brought under the FLSA.

possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (internal citation omitted). A court need not accept conclusory allegations, unsupported conclusions, or unwarranted inferences, even if cast as factual allegations. *Twombly*, 550 U.S. at 555. Surviving a Rule 12 challenge "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *see Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008). Even when viewed in this somewhat Plaintiff-friendly context, it is clear that QET's counterclaim does not meet the required burden.

II. **QET HAS FAILED TO PLEAD ANY VALID CLAIMS FOR RELIEF AGAINST ANY PLAINTIFF**

> "At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will "be a context- specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief,'" as required by Rule 8."

*Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)

As evident from the face of the counterclaim itself and as shown below, the counterclaim fails to allege anything approaching adequate factual support for five of the six claims made. Essentially no specific facts are pleaded against any of the Plaintiffs and any pretense of distinction amongst the Plaintiffs are abandoned. Allegations against one Plaintiff are imputed to all without any reason, justification or support. Almost completely, the counterclaim does nothing beyond make general accusations of wrongdoing and ephemeral duties owed and breached and damages supposedly incurred. Such "'naked assertions' of wrongdoing necessitate some 'factual

3

enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Id.* at 193 (citing *Twombly*, 550 U.S. at 557).

### a. QET has Failed to Plead a Claim for Breach of Contract.

"The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619 (2004) These elements have been long established and should be without controversy. Yet, the counterclaim fails to allege facts that satisfy a single one of these elements, let alone facts that satisfy all three.

QET repeatedly refers to Plaintiffs as independent contractors ([Doc. 10 at ¶¶ 1, 3, 7, 15]) and speaks to Plaintiffs' amorphous "contractual duties" ([Doc. 10 at ¶15]), but there is no express allegation of any contract between QET and any of the Plaintiffs, just a repeated reference to Plaintiffs as QET's independent contractors. In fact, the only contracts actually mentioned in the counterclaim are those between QET and its customers[5] and QET does not allege Plaintiffs to have been party to those contracts. *See* [Doc. 10 ¶ 6] Presumably QET contends that Plaintiffs breached some sort of contractual duties owed to QET in allegedly performing poor installations or in somehow converting QET property, but without any allegation whatsoever of a contract or a description of the operative dates and terms of same, it is difficult to see how the counterclaim states a legally enforceable obligation and a breach of same. In fairness, QET does indicate that Plaintiffs breached generalized non-specific duties owed to QET (*See* [Doc.10 at ¶¶ 7-8, 10, 15, 18, 25, and 28]), but QET does nothing to indicate which, if any, of these supposedly breached duties spring from a contract.

---

[5] QET does not provide any specifics regarding the customer contracts at issue.

QET has also failed to plead with any particularity the damages it claims to have suffered as a result of Plaintiffs supposed conduct.  Instead, the counterclaim merely states that Plaintiffs performed inferior and deficient work and that QET had to repair their work (*See* [Doc. 10 at ¶ 8-10]).  In paragraph 9, the counterclaim mentions a specific job where a customer Atkinson serviced had to be refunded $4,000, but that is the sole nonconclusory fact offered with respect to supposedly poor work by any of the Plaintiffs.  In the very same paragraph, QET states that it was sued to Alley's alleged poor work, but no information is provided as to the lawsuit itself or the actual damages suffered by QET.  Moreover, the counterclaim makes no attempt to delineate which Plaintiff is responsible for which alleged damages or from which act the alleged damages emanate.  Rather, the three Plaintiffs are treated as a unitary faction with each somehow jointly responsible for the acts and omissions of the other, but Defendant presents no facts supporting such a theory and certainly offers no basis as to why or how one Plaintiff would be responsible for the breaches of another.

Pursuant to FED. R. CIV. P. 8(a)(2) in order to state a claim for breach of contract, or any of the other claims asserted in the Counterclaim, QET must plead facts "sufficient to place [the Plaintiffs] on notice of the nature of [its] claims." *Fletcher v. Tidewater Builders Ass'n*, 216 F.R.D. 584, 589 (E.D. Va. 2003).  QET has failed this obligation in all respects. It has failed to plead the existence of a contract or contracts, the terms of the contract(s), and the specific damages suffered as a result of the breach of each specific contract.  Finally, the counterclaim fails to inform any of the Plaintiffs exactly what damages they are responsible for.   The counterclaim offers no 'who, what, where, when, why.'  Plaintiffs are mostly left to guess for what alleged conduct they have been sued for $1.35 million dollars.  This problem infects the whole counterclaim.  It is by no

means exclusive to Breach of Contract and is a reason for each count's dismissal, with the exception of defamation (which deserves dismissal on unrelated grounds.)

### b. QET has Failed to Plead a Claim for Implied Indemnity

Because the counterclaim is so devoid of factual allegations regarding the duties owed, the bases for those duties, and the specific harms done and damages suffered as a result of an alleged breach, QET's claim for implied indemnity must suffer the same fate as its breach of contract claim. The counterclaim simply does not portray any of the specifics necessary for the Plaintiffs to understand the implied indemnity claims levied against them. But, even if those rudimentary specifics were present, the implied indemnity claim still cannot proceed as it has not been properly plead.

> Generally, the principle of implied indemnity arises from equitable considerations. A claim for Implied Indemnity arises when the Indemnitee, the person seeking to assert implied indemnification, has been required to pay damages caused by an indemnitor, a third party. In the implied indemnification context, the indemnitee is liable to the injured party because of some positive duty created by statute or common law, however, the actual cause of the injury to the third party was the act of the indemnitor.

*Winchester Homes, Inc. v. Hoover Universal, Inc.*, 39 Va. Cir. 107, 114 (Fairfax Cir. Ct. 1996)

It is unclear if QET contends its claim for indemnity springs from the contract or as a matter of tort. This is not a distinction without a difference. In *Hanover Ins. Co. v. Corrpro Cos.*, 312 F. Supp. 2d 816, 821 (E.D. Va. 2004) the Eastern District of Virginia spoke to the dichotomy. "In the tort context, a right of indemnity will be implied in equity where a party without personal fault is legally liable for damages caused by another's negligence." If QET contends implied indemnity based on tort, it must expressly plead how it was legally liable, and to whom, and it must plead why each Plaintiff was the real party at fault. The counterclaim does not even attempt to do this. Instead, it uses implied indemnity as a convenient catch-all to sue the Plaintiffs for supposedly shoddy work done for some unknown customer, based on some unknown contract(s), at some

unknown times between 2018 and 2020, for which QET was made to pay some unknown amount and for which Plaintiffs are responsible for reimbursing for some unexplained reason.

To the extent QET's implied indemnity count is premised on contract, QET's claim faces a still greater burden. Turning back to *Hanover Ins. Co. v. Corrpro Cos*, with regard to contractual relationships, the Court stated "equity is more hesitant to imply an indemnity right, because if the parties desired to create an indemnitor-indemnitee relationship, they could have done so expressly in the contract." Thus, the Court reasoned that "only unique factors or a special relationship between the parties give rise to such a right." *Hanover Ins. Co. v. Corrpro Cos.*, 312 F. Supp. 2d at 821 (citing *Transdulles Ctr., Inc. v. USX Corp.,* 976 F.2d 219, 228 (4th Cir. 1992)). QET makes no allegation of any such special relationship or unique factors because none exist.

    c.  **QET has Failed to Plead a Claim for Negligence**

"Negligence is not actionable unless there is a legal duty, a violation of the duty, and consequent damage" *Marshall v. Winston*, 239 Va. 315, 318 (1990). The counterclaim recites, albeit in conclusory fashion, a legal duty, a violation of duty, and consequent damages. However, QET's count for negligence (Count III) suffers from the same terminal defect as the counterclaim's other first four counts. QET has not presented facts to indicate what specific acts, if any, were negligent, which Plaintiff committed them, when those acts were committed, how those acts breached each Plaintiff's duties, and what damages were occasioned by each of those acts. All that remains are QET's general and unsupported conclusions of negligent and intentional wrongdoing by the Plaintiffs. Such a complaint, devoid of any "factual enhancement" should not survive the Rule 12(b)(6) rubric. *See Francis*, 588 F.3d at 193.

### d. QET has Failed to Plead a Claim for Breach of Fiduciary Duty and Fraud

QET's allegations of Fraud and Breach of Fiduciary Duty are combined into a single count. Plaintiffs are alleged to have failed to disclose and misrepresented work they performed, and to have submitted falsified time records in order to receive higher commissions. These are weighty accusations, yet the counterclaim offers nothing in support other than the following from Paragraph 13.

> QET also discovered that Alley, Atkinson and Bratton had each defrauded and stole from QET. Alley, Atkinson and Bratton deliberately padded invoices in order to receive higher commissions. Alley, Atkinson and Bratton added different commission-able items to their invoices every week. QET found out that Alley, Atkinson and Bratton did not actually install the items.

QET does not indicate any specific invoices which were supposedly padded, nor has it identified any of the commission-able items that were purportedly not installed.  Once again, the Plaintiffs are left to guess which acts were fraudulent, when the acts occurred, which one of them committed said acts, and the degree to which QET was allegedly damaged.  Additionally, Paragraph 26 states that the Plaintiffs devised a scheme to defraud QET but no factual support for any such scheme is alleged or implied anywhere in the counterclaim. In fact, the above allegation taken as true[6], implies that *customers* of QET were defrauded, and that both QET and plaintiffs benefitted from padded invoices. But there is no explicit or implied fact in Paragraph 13 that supports a claim of theft or fraud against QET.

"In order to state a claim for breach of fiduciary duty, Plaintiff must plead the (a) duty, (b) breach, and (c) damages sustained." *See Sun Hotel v. Summitbridge Credit Invs. III, LLC*, 86 Va. Cir. 189, 195 (Fairfax Cir. Ct. 2013).  QET never makes clear from where Plaintiffs' supposed fiduciary duty comes from.  Rather, Plaintiffs are alleged to have been independent contractors

---

[6] Plaintiffs deny this allegation, but accept it as true only for purposes of Rule 12(b)(6).

8

"with a duty to install QET's products in customers' homes in a workmanlike manner and in accordance with customary standards in the industry." It is left unsaid what about the relationship made the Plaintiffs fiduciaries. A fiduciary relationship exists "when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence." *See Allen Realty Corp. v. Holbert*, 227 Va. 441, 446 (1984). QET's failure to allege any fiduciary relationship is fatal to this count, as is its failure to allege with any clarity the breaches that supposedly occurred or the damages supposedly absorbed by QET.

As mentioned above, QET's fraud claim is based on the strength/lack thereof as its breach of fiduciary duty claim. The claims fail under any pleading standard, but this is especially true under the heightened pleading requirements unique to fraud claims under Rule 9(b) of the Federal Rules of Civil Procedure. "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel. Carter v. Halliburton Co.*, 2009 U.S. Dist. LEXIS 1936 *10 (E.D. Va. Jan. 13, 2009). QET's vague complaint and formulaic recounting of the elements of fraud without any actual factual allegations fails this requirement in all respects. At most, QET has plead generally that the Plaintiffs engaged in varied wrongdoing during the course of their employment for which QET claims they are liable.

**e. QET has Failed to Plead a Claim for Conversion**

The Virginia Supreme Court has explained the elements of conversion to be "any wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." *See United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305

9

(1994), quoting Universal C.I.T. Credit Corp. v. Kaplan, 198 Va. 67, 92 S.E.2d 359 (1956). QET's conversion count runs through these elements in conclusory fashion in Count V. However, nowhere in the counterclaim is it actually explained what goods owned by QET Plaintiffs exerted wrongful dominion over. Paragraph 13 of the counterclaim makes nebulous reference to alleged invoice padding (to receive higher commissions) and some sort of supposed theft from QET, but it does not explain what property or goods were stolen, nor when the instances of conversion occurred, nor who committed the specific acts of conversion. Furthermore, this count suffers from a more elemental failure. "In general, a cause of action for conversion applies only to tangible property." *United Leasing Corp. v. Thrift Ins. Corp* 247 Va. At 345.[7]  QET does not make such an allegation. It does not identify what property or goods Plaintiffs are alleged to have converted. To the extent QET would suggest alleged wrongfully received money is the property at issue, it does not supply a single fact supporting a contention that any alleged invoice padding cost it *any of its money, as opposed to a customer*. This is for good reason. The counterclaim cannot square with such an allegation, as QET quite clearly alleges that Plaintiffs were only paid as commissioned independent contractors. *See* Doc. 10 at ¶ 6. It of course follows that the more commissions Plaintiffs were paid, the more money QET would have been paid as well.

    f.  **QET has Failed to Plead a Claim for Defamation**

Of the half-dozen counts QET purports to advance, it is only QET's defamation claim regarding Plaintiff Alley that is offered with any actual non-conclusory supporting facts. Yet, while QET does offer the facts supporting the claim, it is those same facts that make it obvious

---

[7] *United Leasing Corp.* also indicates courts have recognized a carve out for conversion claims where intangible property rights arise from or are merged with a document, such as a valid stock certificate, promissory note, or bond." No such allegations of intangible property have been plead here.

that this claim cannot go forward.  "In Virginia, when a plaintiff alleges defamation by publication, the elements are "(1) publication of (2) an actionable statement with (3) the requisite intent." *Schaecher v. Bouffault*, 290 Va. 83, 91 (2015) In order for a statement to be actionable as defamatory it must be a statement of fact. "It is firmly established that pure expressions of opinion are protected by both the First Amendment to the Federal Constitution and Article I, Section 12 of the Constitution of Virginia and, therefore, cannot form the basis of a defamation action." *Williams v. Garraghty*, 249 Va. 224, 233 (1995).  "Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion." *Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 132 (2003).  Assuming a statement of fact, and not opinion, is at issue, a claim for defamation can still only proceed when there has been publication to a third party.  "There are numerous cases in Virginia dealing with publication. Publication is uttering the slanderous words to some third person so as to be heard and understood by such person." *Nunes v. Twitter, Inc.*, 103 Va. Cir. 184 *3-4 (Henrico Cir. Ct. 2019), citing *Thalhimer Bros., Inc. v. Shaw*, 156 Va. 863, 871 (1931). *See also Loria v. Regelson*, 39 Va. Cir. 536, 537 (Cir. Ct. 1996) (citing *Chalkley v. Atlantic Coast Line R. Co.*, 150 Va. 301, 334 (1928) and *Montgomery Ward v. Nance*, 165 Va. 363, 378-79 (1935) ("Defamation occurs when there is a publication of a defamatory statement to a third party. There is no publication when a defamatory communication occurs between persons within a corporate entity who have a duty and interest in the subject."))   QET's claim for defamation must fail because it concerns exclusively statements of opinion which are alleged to have been published only to QET itself.

      The only facts plead regarding defamation are found in Paragraphs 11-12 of the counterclaim.

> 11. On Tuesday, July 7, 2020, Michael White and Hunter Austin, QET
> technicians, were fueling up one of QET's company vehicles at a local gas station, when

> Alley drove by and spotted the QET van. Alley made a U-turn, traveled back to the gas station, stopped, and made a point to talk to White and Austin.
>
> 12. Alley told White and Austin that QET (and its owners, Joe Basso and Justin Jackson) "stole" from him and that QET was "scamming people". Alley then stated that QET had changed the name of its business 3-4 times because of "shady" business practices and because of QET's "terrible online reputation". Alley concluded by stating to White and Austin that QET had "begged" *him* not to leave the company and continued to beg him to come back to work for QET for weeks after he left.

As pled, Alley is alleged to have made only statements of opinion. Alley may well hold the opinion that QET stole from him, that is has a poor reputation, and that it is "shady." As to whether QET begged him to come back or not, that too, is a matter of opinion, but even if it weren't, such a statement clearly lacks the "[r]equisite defamatory sting" needed for a statement to be actionable. *See Schaecher v. Bouffault*, 290 Va. at 95. Moreover, Alley's statement that QET "stole" from him can be reasonably inferred to relate to the wage theft that is at the heart of Alley's FLSA lawsuit. *See* Plaintiffs' Complaint. "Stealing" overtime wages though is an FLSA violation, but not a crime. A claim for defamation *per se* cannot exist without the allegation of a crime. See Fleming v. Moore, 221 Va. 884, 889 (1981) (defamation *per se* exists where a false statement imputes or implies: (1) commission of a crime of moral turpitude; (2) infection with a contagious disease (3) unfitness to perform the duties of an office or profession; (4) prejudice to a party in his profession or trade). Therefore, the words are not actionable as a matter of law.

Finally, even if any of the statements were statements that were otherwise actionable (they are not), QET pleads they were made to two QET technicians operating a QET van at a gas station in public. In short, the statements, would have been published only to QET, or those whom QET held out as being part of QET, and not to a third party. "Defamatory statements must be published to a third-party in order to be actionable." *Depp v. Heard*, 102 Va. Cir. 324 (Cir. Ct. 2019) citing *Dickenson v. Wal-Mart Stores, Inc.* No. 96-0240, 1997 U.S. Dist. LEXIS 19459, at *8 (W.D. Va.

12

Nov. 3, 1997). Because QET has not and cannot identify any party, other than its own technicians, to whom any of the alleged statements were made, its defamation claim must fail because it cannot meet the element of "publication."[8]

### g. QET's Prayer for Relief is Improper

Va. Code Ann. § 8.01-443 generally allows for judgments to be taken against several defendants for the same act provided they are "joint wrongdoers." As mentioned above, QET fails to delineate which Plaintiff is responsible for which act. But, QET also fails to supply explanation as to how any of the supposed wrongs it complains of were the result of any joint effort. Instead, QET blindly claims the Plaintiffs are jointly and severally liable. It seeks to hold all of them jointly and severally liable despite the counterclaim providing no facts to support such liability. Given the nature of the allegations made, this is improper. QET alleges a series of discreet claimed wrongful acts with no connective tissue amongst the Plaintiffs. For example, the Counterclaim would have each Plaintiff be liable for Alley's alleged defamation, even though there is no allegation Messrs. Atkinson or Bratton played any role in the communication. Similarly, Mr. Alley would be responsible for the acts of Bratton and Atkinson and any alleged associated damages, even if they came long after his termination. Further, QET would have each Plaintiff be responsible for alleged breaches of contracts they were not a party to and be responsible for any poor installations performed by any one of the others, even if they did no work on that installation. QET has also identified no facts so much as suggesting *any* concerted activity or joint plan amongst the

---

[8] This issue typically arises in the context of the intersection of defamation and qualified privilege for intracorporate communications. There, the Virginia Supreme Court has stated that "[c]ommunications between persons on a subject in which the persons have an interest or duty are occasions of privilege. However, the privilege attaching to such occasions is a qualified privilege which may be defeated if the plaintiff proves that the defamatory statement was made maliciously…..We have applied the doctrine of qualified privilege in a number of cases involving defamatory statements made between co-employees and employers in the course of employee disciplinary or discharge matters." *Larimore v. Blaylock*, 259 Va. 568, 572 (2000) (citations omitted). In this case there is no matter of qualified privilege, but consistent with *Larimore* and the cases it followed, QET technicians are part of QET for the purposes of determining whether there was "publication" of the alleged defamation.

Plaintiffs so it can hardly be said a joint venture has been implied or explicitly plead. QET pleads joint and several liability but deigns to provide the Plaintiffs and the Court with no facts supporting the propriety of doing so. Indeed, the only thing holding the Plaintiffs together for the purposes of the counterclaim is that they filed suit against the Defendant to seek recovery of owed wages under the FLSA.

## **CONCLUSION**

QET has failed to present the Court with a complaint satisfying the requirements of Rule 12. The counterclaim lacks any semblance of specificity and fails to inform the Plaintiffs of the allegations against them. Moreover, the scant facts which have been presented fail to legally support any of the proffered claims. Finally, the counterclaim fails to plead any facts supportive of the imposition of joint and several liability for any count, because no such facts could exist. For all these reasons, the counterclaim should be dismissed with prejudice.

Respectfully submitted,

Jacob Alley, Paul Atkinson, and Christian Bratton, on behalf of themselves and all others similarly situated,

By: __/s/ *Zev Antell*_____

Harris D. Butler, III, (VSB No. 26483)
Zev H. Antell (VSB No. 74634)
Butler Royals, PLC
140 Virginia Street, Ste 302
Richmond, Virginia 23219
Telephone: (804) 648-4848
Facsimile: (804) 237-0413
harris.butler@butlerroyals.com
zev.antell@butlerroyals.com

Craig Juraj Curwood (VSB No. 43975)
Curwood Law Firm, PLC
530 E. Main Street, Suite 710
Richmond, VA 23219
Telephone: (804) 788-0808
Fax: (804) 767-6777
ccurwood@curwoodlaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Steven S. Biss (VSB #32972)
> 300 West Main Street, Suite 102
> Charlottesville, Virginia 22903
> Telephone: (804) 501-8242
> Facsimile: (202) 318-4098
> Email: stevenbiss@earthlink.net
>
> *Counsel for Quality Eco Technologies, LLC*

/s/ *Zev Antell*
Zev H. Antell (VSB No. 74634)
Butler Royals, PLC
140 Virginia Street, Ste 302
Richmond, Virginia 23219
Telephone: (804) 648-4848
Facsimile: (804) 237-0413
zev.antell@butlerroyals.com